The United States v. Brewer is the next case for argument. Good morning, Your Honors. My name is Sam Ansell. I appear to be... Mr. Ansell, you haven't been called yet. I apologize. We usually wait until one's adversary gets seated. Of course. Mr. Ansell. Thank you, Judge. Sam Ansell on behalf of Appellant Nolan Brewer. May it please the Court, the issue before this Court is whether the District Court clearly erred in finding that Brewer endangered a place of public use within the meaning of Section 2K1.4A2C of the Sentencing for Adults. Mr. Ansell, I have a preliminary question for you. You want us to remand to the District Court for resentencing. Yes. Have you discussed the risks of that with your client? Yes. The United States says that a properly performed guidelines analysis would come in with a higher number and that your clients are facing higher sentences. Do they understand they're taking that risk? We've discussed that risk, Your Honor. However, the District Court did decline to find that, to make that finding of attempted destruction of a place of public use and instead found, in fact, the probation office had made that recommendation in the pre-sentence investigation report that that guideline would apply and the judge explicitly declined to make that finding. Your clients understand that there is a risk that the attempt guideline is higher, right? That's what the district judge focused on. If we say that and remand, it just invites a higher guideline range back on remand. The question I'm asking is, does your client know that the very argument you are making in support of a remand will drive a higher sentence? Well, I disagree with the premise of the question. You can disagree with that, but that's something that you're asking us to do. My question is, does your client understand, your clients, understand that that can happen? My client and I have discussed the risk of a higher guideline finding on remand, Your Honor. However, and I don't think that the evidence supports attempted destruction of a place of public use. And I also don't think that the evidence supports a finding of actual endangerment. I think, first of all, it's important to define the parameters of endangerment. I think in this guideline, endangerment does not mean attempted or intended endangerment. It does not mean potential or contingent endangerment. It means actual endangerment, which... And do you equate that with actual damage? No. I equate... Because you seem to be arguing that at one point in your brief. No, what I am arguing is that there must be a significant risk of substantial damage. I think if you're going to talk about just risk of damage, that is something that's much lower than endangerment. Endangerment means a significant risk of a significant damage, perhaps even a transformative damage. If a species is endangered, its existence is endangered. Same with your health. The same with your life. In this instance, we're talking about a place of public use. So I think the existence of the place or the public utility of the place has to be endangered, meaning that its existence is at risk. And do you agree that the campus of the synagogue here, the grass area, is a public use? Or are you disputing that? I wouldn't concede that the southernmost edge of the property on the far side of the dumpster enclosure is necessarily a place of public use. Looking at the guideline, public use means those parts of any building, land, street, a couple other things, that are accessible or open to members of the public. So how could you dispute that that land, from the evidence in the record, the public could get to, would qualify for public use? Yeah, there's no fence to prevent the public from getting over to the far side of the dumpster, but if you look at the exhibit that was attached to the brief marked as Defense Sentencing Memorandum Exhibit 2, it's at appendix page 11, you can see how far that point is from any area that's publicly used on the campus. And it also, I think it's important to note that the fire that was started, it was merely the gas and styrofoam mixture that burned in the grass. And you can see from the photograph in Government's Exhibit 2 at the sentencing hearing that there is a place where the grass is burned, and it's clear from the photograph that the fire never spread. So absent some mechanism that obeys the laws of physics and chemistry by which this fire could have spread to put at risk the structure or the rest of the campus, I fail to see how what happened here endangered a place of public use any more than a neighbor. My problem with that line of argument is that you seem to be saying that the act must endanger a big chunk of the place of public use. Why? So isn't it better to read it as saying any part of a place of public use? There's no doubt that the fire endangered a part of a place of public use, just not a big part. Just the one and a half square feet of grass. Just the part around the fire. Just that tiny spot. It seems to me your argument depends on interpolating the word substantial before the word part. My question is why that is a good thing to do. Well, I also think that endangerment requires a finding that the damage is not something that's easily recoverable from. Here you have... Why? Why? Well, because if something's not endangered... If the entire synagogue had burned to the ground, it could have been rebuilt, right? I wish you'd address my question, which is why it is appropriate to insert the word substantial before the word part. Because your honor, I think that endangerment, the word endangerment signifies something more than de minimis risk of minor damage. If that was all that happened here, then that would be... The guidelines would be written that way if that was all that was necessary. But look, I don't think you're following my question, which says the guidelines are written that way. They use the word part without any qualifier that says substantial or major or important or anything like that. It just says part. That's true. By that logic, then a single blade of grass could be damaged and that could be enough to find endangerment. There has to be... For the word to have any meaning, there has to be significant risk. I drove to Chicago for argument that that created some risk, but I don't believe that I was endangered by that. A gardener has a significant risk of being scratched by a thorn, but the gardener's not a thorn. So, if the word endangerment is going to have any meaning in the guideline, I think that it has to adopt its ordinary meaning. If there's no more questions, I'll reserve my time. Thank you. Mr. Minkler. Good morning, Your Honors. May it please the Court, Mr. Ansel, Josh Minkler, appearing on behalf of the United States of America. To be clear, Your Honors, my client is not asking for a remand. My client is asking for this judgment to be affirmed. While the district court's guideline finding might have been generous to Mr. Brewer... Counsel, let me tell you my problem with the argument. It looked like the district court substantially relied on what she believed to be the original plan rather than what happened. But the guidelines seem to ask what happened rather than what the plan was. Isn't that a problem? Possibly, Your Honor. Possibly. I don't believe it is a problem in this case, and here's why. First of all, what the guidelines require is actual endangerment, and the district court did find actual endangerment, the setting of the fire on a place of public use. Where did the district court find that there was actual endangerment of a part of a place rather than what the original plan of endangerment was? On the sentencing transcript at page 170, the district court stated that Brewer endangered this place of public use by setting a fire on the premises. I think that constitutes the court finding that he endangered this by setting the actual fire as contemplated by the guidelines. Did the court have alternative holdings? It almost seemed like given the exchange and the government at the end asking for clarification that there was a little bit of a moving target in both the government's position and what the court found. That's correct, Judge. At the sentencing hearing, we were arguing, and our argument was directed to the court that this was attempted destruction. Certainly under the way this was argued, I believe the court found it almost this was a lesser included offense. In other words, that what Brewer had intended to do and everything he did created a great risk to the synagogue property. Those things that he did to create the risk to the synagogue property included bringing the items onto the synagogue property that would break windows, that would explode in the synagogue, that would cause a fire to spread. What he ended up, and the government argues that that is even under Mr. Ansel's definition a substantial risk that qualifies as endangerment. But he did more than that. Because there were lights and security cameras on the synagogue, he went to another enclosure, a structure, and set a fire next to that which damaged the premises. It damaged the land. It damaged the enclosure. The photos clearly show that. That also constitutes endangerment. Counsel, let me come back. You pointed to page 147 of the transcript. 170, Judge. I'm sorry. Pardon? 170. I'm sorry, Judge. Okay. Would you say it again, please? Certainly. 170 is what you want me to look at? It sits in transcript 170. Additionally, the district court stated that Brewer. All right. Let me go there. Okay. Keep going. Additionally, the district court stated that Brewer, and there are three ellipses there, so it's not everything the district court said. Additionally, the district court stated that Brewer endangered this place of public use, ellipses, by setting fire on the premises and bringing with them materials to break out the windows of the synagogue, spark plugs, as well as a plan to throw napalm, their homemade napalm, or some drain-o-bombs, onto the building and put something on the floor of the synagogue. So, at least. That's what keeps worrying me. It's a talk about what the plan was, rather than a finding of actual endangerment. I think the court's finding of endangerment is well supported in this record, Your Honor, by the fact that a fire was set on the premises of the synagogue, and that fire spread to a structure on the synagogue and damaged it. Didn't the court go on to say just a little bit later that, and this is at Appendix 35, the fire and the grass endangered the public place? I believe the court did say that. Because I think the government was trying to get clarification. Yes, the government did ask for clarification, and the court did add that. And it clearly did endanger the public place by damaging the public place. That is, the grass, and certainly the structure that's on the grass. But in answer to your question, Judge, I think the alternatives are a possible finding, and certainly are supported by this record and by the case law, particularly the case, the Holmes case law, that there's one of two ways where the court could find endangerment. Either actual damage or the risk of damage or destruction. And that's what the district court found. The district court found that the conduct of Mr. Brewer bringing all these items onto the property of the synagogue constituted endangerment, constituted an unacceptable risk. And in addition, Mr. Brewer endangered the property of the synagogue by setting it on fire. Would just bringing those items cause a risk as opposed to the actual setting of the fire? It's the government's position that that would constitute a risk. Even though this guidelines section does not require intent, it just is whether there's endangerment or not. There is some case law in the Seventh Circuit that factors in intent to determine endangerment. And so we have a plan to destroy the synagogue. We have not only a plan to destroy the synagogue, but purchasing items that would destroy the synagogue. We have driving 50 miles all the way to the property to destroy the synagogue. And then we have bringing all these things onto the property of the synagogue. That creates an unacceptable risk of damage or destruction. And under common definitions of endangerment, that would fit as endangerment. If they had just brought the items onto the property, the gasoline and other items, and had the additional evidence about their intent to harm, but hadn't started the fire, is it the government's position that that would qualify for the guidelines? It would, Your Honor. Under the alternative definition of risk, with this intent and with bringing all those items onto the property of the synagogue, clearly it's attempted destruction. That's what we argued in front of the district court. We also believe that would qualify as endangerment. We believe that's what Judge Pratt, sort of call it as she sees it type ruling, heard the six hours of evidence about this plan and what actually happened and said, this endangered a place of public use, the synagogue. That is a very reasonable inference from these facts. I think it's the only reasonable inference from these facts. And that's why we're requesting Judge Pratt's ruling and the judgment against Mr. Brewer to be affirmed. There are no further questions. Thank you for your time. Thank you, Counsel.  Thank you, Your Honor. I think it's important to distinguish between contingent risk and actual risk. Bringing items that might have been used, whether they could have been used effectively or not is another question, but bringing items that might have been used under some original plan doesn't create actual endangerment. And as far as the damage to the land, the one and a half square foot of burned grass, it seems to be not that different than a golfer who doesn't pick up his divots after playing 18 holes. He's damaged about the same square feet of property, but he's not endangered the golf course. Thank you. Thank you very much. The case is taken under advisement.